IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                           Plaintiff,<br><br>v.<br><br>ANTONIO RAMIREZ-LOPEZ (01),<br><br>                           Defendant. | Case No. 25-20046-01-DDC |

**MEMORANDUM OPINION**

The United States indicted defendant Antonio Ramirez-Lopez, a citizen of Honduras, for reentry of a previously removed alien convicted of an aggravated felony. Doc. 9 at 1–2. The government has moved to detain Mr. Ramirez-Lopez pretrial. In support, the government claims Mr. Ramirez-Lopez presents a flight risk based primarily on his failure to appear for an immigration proceeding in 2001, his identity-theft conviction in 2011, and his subsequent illegal reentry. The court, considering the matter for a second time on remand, disagrees. Mr. Ramirez-Lopez's failure to appear and his sole conviction are dated. He has three children and an ailing mother in the Kansas City area, giving him significant community ties. And Mr. Ramirez-Lopez has an Immigrations and Customs Enforcement (ICE) detainer. The ICE detainer has kept Mr. Ramirez-Lopez from going far. Earlier, when the Magistrate Judge ordered his release on conditions, the United States Marshal Service adhered to the detainer—delivering Mr. Ramirez-Lopez to ICE in lieu of releasing him. It appears the same will happen now, even though the court will deny the government's request to detain Mr. Ramirez-Lopez pretrial and orders him released, subject to the conditions identified in a separate Order (Doc. 29).

I.  **Factual Background**

The court recites the following background facts based on a detention hearing it held on August 19, 2025.

Mr. Ramirez-Gomez entered the country illegally at the age of 16 and, when immigration authorities initiated removal proceedings, he did not appear for those proceedings. The immigration judge thus issued an order of removal in abstentia in 2002. In 2010, Mr. Ramirez-Lopez was arrested again in the United States. He was fleeing a gang-related fight and admitted to gang membership. This arrest led to a conviction of aggravated identify theft, based on a stolen Social Security number Mr. Ramirez-Lopez then possessed. After he served his sentence, he was deported in 2012. At some unknown point, Mr. Ramirez-Lopez returned to the United States, where authorities recently found him.

II. **Procedural Background**

At a hearing before a United States Magistrate Judge in June 2025, the government moved to detain Mr. Ramirez-Lopez pretrial because it believed he presented "a serious risk of flight." Doc. 18 at 4 (June 6 Hr'g Tr. 4:12–13); *id.* at 21 (June 6 Hr'g Tr. 21:3–8). In support, the government cited Mr. Ramirez-Lopez's failure to appear at his immigration proceedings, his felony conviction, his use of false identities, and his lack of ties to the community. *Id.* at 6 (June 6 Hr'g Tr. 6:8–12). The government also explained that ICE had lodged a detainer, so if the court granted pretrial release, Mr. Ramirez-Lopez "simply would go from this court's custody into ICE's custody where he would be subject to removal proceedings." *Id.* at 16 (June 6 Hr'g Tr. 16:7–10). A witness from the Department of Homeland Security testified that immigration authorities could remove Mr. Ramirez-Lopez because of the prior aggravated felony and final order of removal. *Id.* at 18 (June 6 Hr'g Tr. 18:6–11).

The defense, for its part, argued that Mr. Ramirez-Lopez has sufficient ties to the community that he is not a flight risk. The defense emphasized that Mr. Ramirez-Lopez has three children, his mother, and his sister in the Kansas City area and he helps care for his mother. *Id.* at 7–8 (June 6 Hr'g Tr. 7:22–8:3). The defense acknowledged the 2011 conviction, but asserted that Mr. Ramirez-Gomez has stabilized and, if released, would focus on his family. *Id.* at 9 (June 6 Hr'g Tr. 9:1–9). And the defense suggested that the court could use house arrest, a curfew, or GPS monitoring to ensure he doesn't flee. *Id.* at 14 (June 6 Hr'g Tr. 14:21–23). The defense also addressed the ICE detainer, noting a potential intra-executive-branch dispute about whether the government prefers immigration proceedings or this criminal case. *Id.* at 20 (June 6 Hr'g Tr. 20:2–13).

The magistrate judge declined to detain Mr. Ramirez-Lopez pretrial and ordered him released with conditions. Doc. 11. Those conditions required Mr. Ramirez-Lopez to submit to supervision and location monitoring, surrender his passport, remain in the Kansas City area, never possess a firearm, and participate in a curfew. Doc. 12 at 2–3. The government appealed the magistrate judge's decision to the district judge assigned, the signer of this Order. Doc. 15.

The undersigned district judge overruled the magistrate judge's detention decision and ordered Mr. Ramirez-Lopez detained. The court found that Mr. Ramirez-Lopez posed "a serious risk of flight because he is a citizen of Honduras and he has, in the past, failed to appear as scheduled for immigration and deportation proceeding[s]." Doc. 20 at 1. The court also concluded that no conditions of release could assure community safety based on the circumstances of Mr. Ramirez-Lopez's 2011 conviction: his arrest as he fled a gang-related fight and his false identity papers. The court next made findings based on the four mandatory pretrial detention factors found in 18 U.S.C. § 3142(g). The court found that two of the four factors

favored detention: the nature and circumstances of the offense and Mr. Ramirez-Lopez's history and characteristics. For Mr. Ramirez-Lopez's history and characteristics, the court cited his past conduct, his prior record of failing to appear at court proceedings, and that he is "an illegal alien and is subject to deportation." Doc. 20 at 2.

Mr. Ramirez-Lopez filed an interlocutory appeal and the Tenth Circuit reversed this district judge's detention decision. The Circuit found the "statement of the reasons for detention inadequate" because the "court failed to meaningfully address the § 3142(g) factors." Doc. 27 at 9–10. The Circuit also faulted the court for overstating Mr. Ramirez-Lopez's prior criminal record and failing to acknowledge Mr. Ramirez-Lopez's favorable characteristics.

The court does its best to rectify these errors below, starting with the legal standard governing pretrial detention.

### III.      Legal Standard

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Bail Reform Act, 18 U.S.C. §§ 3141–3156, provides one exception. Under the Act, the court may detain someone pretrial

> if the defendant has been charged with certain enumerated offenses or "in a case that involves a serious risk that such person will flee; or a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror."

*United States v. Ailon-Ailon*, 875 F.3d 1334, 1336 (10th Cir. 2017) (ellipses omitted) (quoting 18 U.S.C. § 3142(f)). If the court agrees with the government that the defendant presents such a risk, then the government must show "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and

the community[.]"[1]  18 U.S.C. § 3142(e).  "The government must prove risk of flight by a preponderance of the evidence[.]"  *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003).

Congress has specified four factors to determine whether any conditions of release will assure the appearance of a defendant:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).  The court applies these factors, below.

**IV.     Analysis**

The court analyzes the four § 3142(g) factors in order.

*First*, the court finds that the nature and circumstances of the offense do not favor detaining Mr. Ramirez-Lopez pretrial.  The statute provides a non-exhaustive list that hints at the kinds of offenses Congress envisioned favoring pretrial detention:  crimes of violence, sex trafficking, terrorism, or crimes involving minor victims, controlled substances, firearms,

---

[1]     In this case, the government made no effort to allege that Mr. Ramirez-Lopez presented a danger to the community.

explosives, or destructive devices. *Id.* § 3142(g)(1); *see Cisneros*, 328 F.3d at 618 (finding nature and circumstances of RICO conspiracy charge favored pretrial detention where circumstances involved "predicate acts of murder, conspiracy to murder, and the manufacture and possession with intent to distribute narcotic drugs and other controlled substances"). The offense here, illegal reentry following conviction of an aggravated felony, bears little resemblance to those offenses. And the circumstances of the offense don't suggest any violence or other nefarious activities; authorities simply found Mr. Ramirez-Lopez in the United States. The government asserts that this is not a run-of-the-mill re-entry case because Mr. Ramirez-Lopez has an aggravated felony conviction. It's a forceful point. But still, that conviction came 14 years ago, and it convicted defendant of a nonviolent offense—identity theft. Given the nonviolent nature and circumstances of the alleged offense, the court finds that this factor favors release.

*Second*, the court weighs the evidence against the defendant. Mr. Ramirez-Lopez doesn't dispute that this factor favors the government. And with good reason. He has a final order of removal, issued in abstentia. He also was deported after he served his sentence for his identity theft conviction. The defense never suggests that any government official approved his reentry to the United States. And he was arrested in Kansas.

*Third*, the court must consider Mr. Ramirez-Lopez's history and characteristics. On the positive side, Mr. Ramirez-Lopez has three children, a sister, and his mother in this area. And he helps with his ailing mother's medical care. These are substantial ties to the community; if Mr. Ramirez-Lopez fled from the consequences of this case, he'd also abandon those who need him. The government complains that we don't know how long Mr. Ramirez-Lopez has been in the Kansas City area, but defense counsel proffered that Mr. Ramirez-Lopez has been in the Kansas

City area for at least seven years. The court declines to accept a proffer when a witness who likely holds personal knowledge refuses to share her knowledge even though she appeared voluntarily in court.[2]

On the negative side, Mr. Ramirez-Lopez has an aggravated felony conviction. Yet our Circuit has expressed concern that the court previously overstated Mr. Ramirez-Lopez's criminal record. One conviction for aggravated identify theft does not qualify as an extensive criminal record. But the circumstances surrounding this felony—fleeing a fight and admitting to gang membership—are a bad look. Yet we don't know Mr. Ramirez-Lopez's role in the fight, and he wasn't charged with a violent offense arising from the fight. What's more, the government here hasn't proffered any evidence that Mr. Ramirez-Lopez currently belongs to a gang. Felony conviction aside, also weighing against release is Mr. Ramirez-Lopez's failure to attend an immigration proceeding in 2001. But, given that this occurred 24 years ago, and in abstentia while Mr. Ramirez-Lopez was a minor, the court declines to give much weight to this failure to appear. The positive aspects of Mr. Ramirez-Lopez's history and characteristics outweigh the negative ones, though not by a substantial margin.

*Last*, the court must consider whether releasing Mr. Ramirez-Lopez would pose a danger to anyone or to the community. The government had little to say about this factor, and rightly

---

[2]   Mr. Ramirez-Lopez's daughter, who appeared as a defense witness at the August 19, 2025, hearing, refused to answer the prosecutor's question about how long Mr. Ramirez-Lopez has been in the country. When asked why she wouldn't answer, the witness said she simply didn't want to answer. She never invoked any of her rights to justify her refusal to answer, nor did any attorney appear on her behalf that could've advised her of such rights. Simply refusing to answer—without providing any reason— didn't help her father. Instead, it deprived the court of information critical to assessing Mr. Ramirez-Lopez's ties to the community. Despite the witness's troubling behavior Mr. Ramirez-Lopez's chances for release survive. No one asked the court to do anything about the witness's refusals to answer. And though the court has no reason to doubt the assistant public defender's veracity, the court declines to accept as reliable a proffer when a witness with first-hand knowledge refuses to answer a simple factual question.

so. The charge here is nonviolent and Mr. Ramirez-Lopez's previous conviction is for a nonviolent offense.

The court concludes by considering one practical point: the ICE detainer. At the hearing, a Department of Homeland Security agent testified that, in ICE's view, Mr. Ramirez-Lopez's prior order of removal remains enforceable. Our Circuit has held that "a risk of involuntary removal does not establish a 'serious risk that [the defendant] will flee' upon which pre-trial detention may be based." *Ailon-Ailon*, 875 F.3d at 1337 (alteration in original) (quoting 18 U.S.C. § 3142(f)(2)(A)). So the ICE detainer, on its own, doesn't justify pretrial detention. "But, conversely, an ICE detainer cannot be used as conclusive evidence that a defendant poses no risk of flight." *United States v. Vargas-Ramirez*, No. 20-40003-01-DDC, 2020 WL 1285378, at *2 (D. Kan. Mar. 16, 2020) (citing *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019) ("[J]ust as an immigration detainer cannot support the categorical denial of bail, neither can an immigration detainer support the categorical grant of bail.")).

Put simply, the ICE detainer alone can't resolve the question of pretrial release. At the August 19, 2025, hearing the government urged the court not to consider the ICE detainer at all. But it cited no authority justifying such blinders. Mr. Ramirez-Lopez, for his part, argues that the ICE detainer is relevant. The court agrees with Mr. Ramirez-Lopez. Though not dispositive, the ICE detainer is relevant because Mr. Ramirez-Lopez can't flee while in ICE custody. And Mr. Ramirez-Lopez went into ICE custody following the magistrate judge's order of release. He thus has registered on ICE's radar, so it's unlikely that he will fall through the cracks. Even if he does—or if ICE releases him pending removal—the court already has concluded that Mr. Ramirez-Lopez has sufficient community ties that he will remain in this area.

In sum, that's three factors in Mr. Ramirez-Lopez's favor and one factor in the government's favor. The government has failed to show by a preponderance of the evidence that Mr. Ramirez-Lopez presents a flight risk. The court thus concludes that it can fashion release conditions that will assure Mr. Ramirez-Lopez's appearance at trial.

## V.     Conclusion

The court denies the government's request to detain Mr. Ramirez-Lopez pretrial and he is ordered released, subject to the conditions in its separate Order (Doc. 29).

**Dated this 25th day of August, 2025, at Kansas City, Kansas.**

> **s/ Daniel D. Crabtree**
> **Daniel D. Crabtree**
> **United States District Judge**